```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION


Kathy Dunn,                         )
                                    )
        Plaintiff,                  )
                                    )
                                    )
     v.                             )       No. 25 C 9521
                                    )
                                    )
Cook County et al.,                 )
                                    )
        Defendants.                 )
```

Memorandum Opinion and Order

Plaintiff Kathy Dunn was an employee of defendant Cook County Department of Public Health ("CCDPH") until her termination in October 2023. Because of that firing and a litany of other alleged acts that preceded it, Ms. Dunn has sued CCDPH, Cook County, and the Cook County Health and Hospital System under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act, ("FMLA"), and Illinois common law. Before me are the defendants' motions to dismiss and to strike pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f). For the reasons that follow, I grant the former in part and the latter in full.

1

**I.**

The following facts are drawn from Dunn's complaint. For present purposes, I treat them as true.

Dunn was an employee of CCDPH for nearly forty years. Over the last twenty-five years of that period, Dunn taught nursing classes at universities in the area. She confined her teaching to hours during which she was not working for CCDPH, and her employment with the universities was approved by her CCDPH supervisors. Sometime before 2022, Dunn disciplined three employees, one of whom threatened to retaliate against her and then accused her of violating dual employment rules. Following an investigation by the Cook County Office of the Independent Inspector General ("OIIG"), CCDPH determined that Dunn had violated restrictions on dual employment. On September 11, 2023, an attorney for CCDPH, Rachel Marrello, gave Dunn the option to either retire or be terminated. In order to take CCDPH's decision to the Cook County Appeals Board, Dunn opted to be fired.

Dunn alleges that the OIIG's finding was pretextual and that CCDPH fired her not for dual employment violations but because of her sex, age, race, religion, and national origin. ECF 1 at 6–7. She writes, *inter alia*, that black employees, a younger employee, and male employees either did not report their dual employment or performed poorly and, unlike her, were neither disciplined nor

2

fired. *Id.* at 4–5. Dunn adds that she was "subjected to unwelcome sexual conduct" including "derogatory comments...[and] unwanted touching" as well as "repeated racial slurs, derogatory comments about her race, [and] offensive jokes" by black employees. *Id.* at 5. Dunn reported this treatment and asserts that retaliation for those reports is another reason behind her firing. *Id.* at 8.

Separately, in 2022, Dunn was injured on the job and developed bursitis.[1] At some time between then and her firing, Dunn requested to work from home full time, and CCDPH denied that request. Dunn reports that "a non-white non-disabled female employee in charge of environmental food service or manager of food safety" was allowed to work from home full time. *Id.* at 6. In May 2023, Dunn requested leave under the FMLA.[2] Dunn was granted FMLA leave and was slated to return in November 2023. CCDPH terminated Dunn while she was on leave in September 2023; she cites retaliation for her taking FMLA leave as a third reason for her firing.

---

[1] Bursitis entails a painful inflammation of the joints. Mayo Clinic Staff, "Bursitis," Mayo Clinic (Aug 25, 2022), mayoclinic.org/diseases=conditions/bursitis/symptoms-causes/syc-20353242.

[2] Dunn does not explain why exactly she needed to go on leave; given the placement in the complaint, it seems related to her bursitis.

3

Dunn filed a charge against CCDPH with the Equal Employment Opportunity Commission ("EEOC") on April 7, 2024. In the "Why you believe you were discriminated against" section, she checked boxes for age, color, disability, race, and sex. In the "What happened to you that you believe was discriminatory" section, she wrote:

> I worked for CCDPH for 39 years without any disciplinary action against me. I taught nursing for 25 years on weekends and at night that was approved by my supervisors. Three disgruntled workers made false accusations and I was given the choice of retirement or termination by HR director Rachel Marrello. I chose termination because I didn't violate any dual employment rules. I have documented evidence and testimony of my innocence and will appear before the O.C. Appeal Board.
>
> The lead accuser was a younger Black male (who threatened retaliation). My supervisor was Black/female, the Department Head is a Black male, the Chief Executive of Nursing is Indian. My replacement is Black, has less education, no public health experience, and is younger than I am.
>
> All employees who have been hired since spring 2023 have been persons of color. The CCDPH attorney did not follow department procedures nor did the OIIG's office conduct a thorough investigation.

ECF 1-1 at 1.

The EEOC issued a right to sue letter on May 15, 2025, and Dunn filed this lawsuit on August 11, 2025. Across twelve counts[3] citing Title VII, the ADEA, the ADA, the FMLA, and Illinois common

---

[3] Due to a typographical error, Dunn's complaint skipped Count VIII; as such, while the last count is numbered XIII, there are twelve in total.

4

law, Dunn alleges that defendants subjected her to discriminatory treatment in her working conditions, discriminatory discharge, retaliatory discharge, harassment, the intentional infliction of emotional distress, and a hostile work environment due to her age, disability, race, national origin, religion, and sex.

## II.

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), I accept as true a plaintiff's well-pleaded factual allegations and draw all reasonable inferences in a plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

To survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Additionally, the Court "need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

All the same, a motion to dismiss tests the sufficiency of the complaint, not the merits of the plaintiff's claim. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). And facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.

Defendants move to dismiss most of Dunn's counts (II-VI, IX-X) by arguing that she has failed to exhaust her administrative remedies. Defendants then move to dismiss all Dunn's counts on the basis that they simply fail to state a claim. And defendants contend that I must strike Dunn's requests for punitive damages because she cannot recover any in a suit against a municipality.

**A. The EEOC Charge**

Before suing under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). The same is true under the ADA, *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018), and the ADEA, *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 637 (7th Cir. 2004). After filing with the EEOC, a plaintiff can only include those claims in her complaint in federal

6

court that were part of her original EEOC charge. *See McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

An EEOC charge need not encompass each fact that a plaintiff later alleges in her complaint to meet the exhaustion requirement. *Cheek*, 31 F.3d at 500. A majority of complainants at the EEOC are laypersons who complete their charges without the assistance of a lawyer, and courts should read their charges generously. *See Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992). As such, a plaintiff may sue on the claims that she makes out in her EEOC charge *and* those claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Geldon v. South Milwaukee School Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (citations omitted).

Claims are "like or reasonably related" to the charge when "(1) 'there is a reasonable relationship between the allegations in the charge and the claims in the complaint;' and (2) 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations of the charge.'" *Chaidez*, 937 F.3d 1004 (quoting *Cheek*, 31 F.3d at 500). At minimum, the charge and complaint must "describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (emphasis in original).

That the charge and complaint "generally assert the same kind of discrimination is not sufficient without some factual relationship between them." *Chaidez*, 937 F.3d at 1005. Where a plaintiff brings suit on claims that she has not included in her EEOC charge and which are not "like or reasonably related" to those in that charge, she has failed to exhaust her administrative remedies as to those claims and they will be subject to dismissal. *Id.* at 1004–06.

Dunn's EEOC charge focuses on her firing and the inadequate investigation of her dual employment and says little about the discrimination that she alleges in the complaint:

> I worked for CCDPH for 39 years without any disciplinary action against me...
>
> [After t]hree disgruntled workers made false accusations...I was given the choice of retirement or termination...I chose termination because I didn't violate any dual employment rules...
>
> The CCDPH attorney did not follow department procedures nor did the OIIG's office conduct a thorough investigation [of whether I broke the dual employment rules].

ECF 1-1 at 1. The only language in the charge related to the discrimination in Dunn's complaint is the following:

> The lead accuser [of the three disgruntled workers] was a younger Black male...
>
> My supervisor was Black/female, the Department Head is a Black male, the Chief Executive of Nursing is Indian.
>
> My replacement is Black, has less education, no public health experience, and is younger than I am.

8

> All employees who have been hired since spring 2023 have been persons of color.

*Id.*

Most of the claims in Dunn's complaint are absent from and are not "like or reasonably related to" the claims in her EEOC charge. Dunn has failed to exhaust her administrative remedies as to all of her ADA claims (Counts IV-VI), given that her EEOC charge never mentions disability—her ADA claims are not "reasonably related" to the facts alleged in the charge. *Riley*, 909 F.3d at 189. Dunn has likewise failed to exhaust her remedies as to her non-FMLA retaliation claims (II, V, IX) because the EEOC charge describes neither protected activity nor retaliation against her for it; it does not "describe the *same conduct*" as her complaint. *Cheek*, 31 F.3d at 501 (emphasis in original). And Dunn has failed to exhaust her remedies as to her hostile work environment claims (III, IV, X) because the EEOC charge does not allege any of the harassment or abuse on which those claims are based. *Id.*

Dunn seeks to broaden the scope of the EEOC charge by directing me to a "Supplemental Information" letter that she sent the EEOC in November 2024. Assuming *arguendo* that I can consider it, the letter does not sufficiently broaden the scope of the

9

charge.[4] The letter, while more detailed than the charge, is focused on the same thing: that she was fired for violation of dual employment rules after an insufficient or otherwise defective investigation by the OIIG, and not on the discrimination at which her complaint is aimed. ECF 17-2 at 1–6. Even considered in full, the letter would not amend the EEOC charge such that it would reasonably relate to the claims in Counts II–VI and IX–X. Those must be dismissed.

That leaves Count I—discrimination under Title VII due to race, religion, or national origin—and Count VII—discrimination based on age. Reading the EEOC charge as generously as possible, I find that it implies, by stating that Dunn's supervisor, her department head, and the chief executive of nursing at CCDPH were of different races from her, that Dunn was fired because of her race. ECF 1-1 at 1. In the same way, because the charge states that Dunn's replacement was both younger and less qualified than her, I read it to imply that she was discharged due to her age. *Id.* Thus, her discriminatory discharge claims at Counts I and VII could "reasonably be expected to grow out of an EEOC investigation

---

[4] *Cheek* suggests that I can consider it "to the extent that the letter may be considered an amendment to the original charge within the meaning of 29 C.F.R. § 1601.12(b)," which allows a charge to be amended "'to clarify and amplify allegations made therein.'" 31 F.3d at 502.

10

into" the allegations in the charge. *Cheek*, 31 F.3d at 500. As such, Dunn has exhausted her administrative remedies as to claims in those counts.

But to be clear, the claims that Dunn has preserved are narrower than those laid out in her complaint. Because the EEOC charge does not imply that Dunn's national origin, religion, or sex were at issue, any claim in Count I that she was terminated because of those factors is outside of the scope of the charge—there is no "factual relationship between" the two sets of allegations. *Chaidez*, 937 F.3d at 1005. Likewise, because the charge does not mention any adverse employment action on CCDPH's part besides Dunn's firing, Dunn has failed to exhaust her remedies as to any claim at Counts I and VII based on any adverse employment action other than her termination. *Id*.

### B. Failure to State a Claim

With the above out of the way, I consider whether Dunn states a claim at the surviving counts (I, VII, and XI-XIII).

#### 1. Count I—Title VIII Discriminatory Discharge

When shorn of those elements which Dunn did not include in her EEOC charge, her claim in Count I boils down to that she was fired because she was white. Dunn pleads that the following were "examples of [CCDPH] treating similarly situated [non-white] employees...more favorably than [her]." ECF 1 at 4. "An African-

11

American male employee who worked as Associate Administrator performed little or no substantive work and/or did not attend meetings but was not disciplined or terminated." ECF 1 at 4. Dunn "was disciplined more harshly than African-American or minority or non-white employees." *Id.* "On information and belief, Defendants replaced Dunn with several African American employees." *Id.* "[T]wo African-American employees with the title Public Health Nurse III and IV were not performing their jobs, but were not disciplined." *Id.*

Under Title VII, a plaintiff can make out a *prima facie* case of discrimination by offering evidence that "(1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably." *Martino v. Western & Southern Financial Grp.*, 715 F.3d 195, 202 (7th Cir. 2013) (citations omitted).

Here, Dunn's theory is that she, unlike non-white employees who broke the rules, was fired. And while her pleadings could be more robust, she states a *prima facie* case. She is a member of a protected class. *McDonald v. Sante Fe Trail Transp. Co.*, 427 U.S. 273, 279-280 (1976). She pleads that she was qualified for the position she held. She was fired. And though she will need to develop these facts moving forward, she has alleged that similarly

situated non-white employees—an associate administrator and the employees with which she was replaced—were treated more favorably than her. She has pled "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 2. Count VII—ADEA Discriminatory Discharge

What remains of this count is that Dunn was discharged because of her age. In service of this theory, Dunn alleges the following facts. "An employee younger than Dunn was given significantly less work and verbally treated better than Dunn." ECF 1 at 5. And "younger employees were not disciplined or terminated despite poor performance or similar conduct for which [Dunn] was disciplined or terminated." *Id.* at 15.

Like with Title VII, to make out a *prima facie* case of age discrimination under the ADEA, Dunn can show, *inter alia*, that younger, similarly-situated employees were treated more favorably than she was. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) (overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016)). To do that, the plaintiff must plead specific facts about those employees, like "showing that [they] dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating

13

circumstances" as would justify disparate treatment. *Id.* at 617–18.

Here, Dunn has only gestured towards a *prima facie* case. She has asserted that younger employees were better treated, but she has failed to plead *any* facts about these younger employees (or their supervisors or what standards they were subject to); instead, she has given me "mere conclusory statements" which cannot survive defendants' motion to dismiss. *Brooks*, 578 F.3d at 581 (citing *Iqbal*, 556 U.S. at 678).

### 3. Count XI—FMLA Retaliation

In Count XI, Dunn asserts that defendants violated her rights under the FMLA by either denying her leave to which she was entitled or by firing her in retaliation for taking FMLA leave. ECF 1 at 17–18. In service of those assertions, Dunn pleads the following facts. "In March of 2022, Dunn fell and was injured on the job, injuring her hip. Dunn underwent surgery...and was diagnosed with chronic bursitis." *Id.* at 3. "On information and belief, Dunn's [bursitis] substantially limits her in one or more major life activities." *Id.* at 5. "At all relevant times, Dunn had a 'serious health condition,'" which was presumably her bursitis. *Id.* In May 2023, "Dunn requested leave pursuant" to the FMLA, and "[p]rior to being terminated in 2023, Dunn was given" FMLA leave.

14

*Id.* at 6. "On September 11, 2023, while Dunn was on family medical leave," defendants terminated her employment. *Id.*

Defendants argue that Dunn has failed to state a claim for denial of FMLA leave, given that she pleads that CCDPH in fact granted her leave. I agree. Defendants then argue that Dunn fails to state a claim for retaliation because she fails to plead that she was entitled to FMLA leave.

To make out an FMLA claim, an employee must show that "(1) he was eligible under the FMLA, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) (citing 29 U.S.C. § 2615). An employee is entitled to leave under the FMLA if "(1) she is afflicted with a 'serious health condition' and (2) that condition renders her unable to perform the functions of her job." *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. 2611(11).

15

As at Counts I and VII, the factual allegations Dunn offers to support Count XI are vague and conclusory. She states that "[a]t all relevant times" she had a "serious health condition," but other than noting that she had bursitis, she does not plead that she had a condition requiring inpatient care or continuing treatment as required by 29 U.S.C. § 2611(11). ECF 1 at 5. She writes that her bursitis entitled her to FMLA leave, but at no point does she plead that the condition rendered her unable to perform her duties. *Guzman*, 833 F.3d at 638. Although she writes that the bursitis impaired "one or more major life activities," she does not name which activities, and I cannot find on that basis that she has pled that the bursitis made her incapable of work. ECF 1 at 5. Dunn has failed to plead sufficient facts to survive defendants' Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

### 4. Count XII—Retaliatory Discharge

At Count XII, Dunn alleges that defendants committed the Illinois tort of retaliatory discharge. In service of that claim, she alleges that on "August 28, 2023, [Dunn] filed a worker's compensation claim in *Kathy Dunn v. Cook County Health Department* in 23WC022359," and that on "December 17, 2012, [Dunn] had also filed a worker's compensation claim in *Kathy Dunn v. Cook County* in 12WC043254." Defendants argue first that the 2012 worker's compensation claim is too remote in time to be causally related to

16

Dunn's firing in September 2023. Second, they attach a transcript from another proceeding where Ms. Dunn apparently admits that the CCDPH was already planning on firing her on August 25, 2023; thus, they argue, her September firing could not have been retaliation for an August claim for worker's compensation.

To make out a claim for retaliatory termination for worker's compensation, an employee must show: "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Worker's Compensation Act; and (3) that he was discharged and the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Clemons v. Mechanical Devices Co.*, 704 N.E.2. 403, 335-36 (Ill. 1998).

Dunn has pled that she was an employee, was injured, and that she exercised her rights under the Worker's Compensation Act. Dunn apparently filed her worker's compensation claim after CCDPH intimated that it would be firing her, but it is "well-established that '[t]he fact that a plaintiff has not filed a [worker's compensation] claim in Illinois prior to her discharge does not preclude her from bringing a retaliatory discharge cause of action.'" *Planell v. Whitehall North, LLC*, 2015 IL App (1st) 140799, at *1, *14 (2015) (quoting *Reinneck v. Taco Bell Corp.*, 696 N.E.2d 839, 842 (Ill. App. Ct. 1998)). It is sufficient for a plaintiff to plead that she "was discharged *in anticipation* of

17

[her] filing a worker's compensation claim." *Fuentes v. Lear Siegler, Inc.*, 529 N.E.2d 40, 42 (Ill. App. Ct. 1988).

Defendants argue that Dunn failed to plead that CCDPH was on notice that she might file for worker's compensation in August of 2023. But at that point, Dunn had filed for compensation once in the past and had gone on FMLA leave for her bursitis. It was reasonable to foresee that she might file for worker's compensation a second time. This is more than a threadbare recitation of the elements of retaliatory discharge, and Count XII survives the motion. *Iqbal*, 556 U.S. at 678

### 5. Count XIII—Intentional Infliction of Emotional Distress

In Count XIII, Dunn alleges that defendants committed the Illinois tort of intentional infliction of emotional distress ("IIED"). Beyond the facts pled at the preceding counts, Dunn adds that defendants "engaged in truly extreme and outrageous conduct" which was "intentional or so reckless that Defendants knew severe emotional distress was substantially certain to result" and that the conduct "caused [Dunn] to suffer severe emotional distress." ECF 1 at 20.

Defendants respond that Dunn's IIED claim is barred by the statute of limitations contained in Illinois's Tort Immunity Act. 745 Ill. Comp. Stat. 10/8-101(a). I agree.

18

Dunn contends that the statute of limitations should have been tolled because of actions defendants allegedly took in her appeal of her firing with the Cook County Appeals Board. I do not see how. If Dunn had been treated so egregiously as to warrant the filing of an IIED claim, she would have been on notice immediately, regardless of her action in front of the Appeals Board. As such, her IIED claim needed to be filed within a year of her firing in September 2024. 745 Ill. Comp. Stat. 10/8-101(a).

### C. Punitive Damages

The parties agree that Dunn is not entitled to punitive damages. As such, I strike her requests for punitive damages.

### IV.

I grant defendants' motion to dismiss in part and deny it in part. All claims at Count I other than Dunn's discriminatory discharge on account of her race are dismissed. Count XII survives as pled. Counts II-XI and XIII are dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 21, 2026