IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kathy Dunn, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 9521 |
| | ) | |
| | ) | |
| Cook County et al., | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

Plaintiff Kathy Dunn worked for defendant Cook County Department of Public Health ("CCDPH"), a constituent of defendants Cook County and the Cook County Health and Hospital System, for nearly four decades. Following an investigation by the county's Office of the Independent Inspector General ("OIIG"), they fired her. Dunn filed suit, alleging state torts and violation of federal civil rights laws. Before me is Dunn's motion for leave to amend her complaint. For the reasons that follow, I grant that motion.

1

## I.

Before trial, a court "should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). But I can deny a motion for leave to amend "where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992).

To determine whether a proposed amendment is futile, courts in the Seventh Circuit apply "the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Runnion ex rel Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015). "Thus, to survive an attack on futility grounds, the amended complaint must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Carmona v. 4-Brothers Transport LLC*, 731 F. Supp. 3d 1046, 1050-51 (N.D. Ill. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

2

**II.**

Dunn, who is a white female, worked as a nurse and nurse administrator for CCDPH for thirty-nine years.[1] During her last twenty-five years with the agency, Dunn taught classes at area universities in her free time. Towards the end of her tenure, the Cook County OIIG began investigating Dunn's university activities for possible violations of the county's dual employment rules. At the time that the investigation began, Dunn was an interim Co-Director of Nursing, which was a "career service" position. While the investigation was ongoing, Dunn applied for a position as, and was promoted to, Associate Director of Nursing, which was a "non-career service" position. Career service positions appear to enjoy protections against termination, while non-career service positions appear to be at-will.[2]

According to the complaint, towards the end of her time with CCDPH, Dunn disciplined several younger, non-white employees, who

---

[1] Readers can find a more complete accounting of the facts in my previous memorandum opinion and order. *Dunn v. Cook County*, 816 F. Supp. 3d 858, 864–65 (N.D. Ill. 2026) (granting in part defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)). For present purposes, I take Dunn's allegations as true.

[2] The parties have not explored the meaning of these terms, but the EAB has jurisdiction to review discharge appeals only for career service employees. Cook County Code of Ordinances § 44-50(a).

threatened to retaliate against her, and who initiated a campaign of racial and sexual harassment against her.

Dunn also suffered from bursitis, which caused her, in the spring of 2023, to go on a leave of absence under the Family and Medical Leave Act ("FMLA").

In August 2023, the county called Dunn in for a meeting with an attorney from OIIG named Rachel Marrello. Marrello informed Dunn that OIIG had found her in violation of the county's dual employment rules and told Dunn that she could either resign or be fired. Dunn opted to be fired so she could appeal the firing before the Cook County Employee Appeals Board ("EAB"). She filed that appeal in September 2023. The county initially argued before the EAB that Dunn had filed her appeal untimely, but after the close of discovery began arguing that, because she was a non-career service employee, the EAB lacked jurisdiction to hear the appeal at all. While her appeal was pending, in April 2024, Dunn filed a charge of sex and age discrimination with the Equal Employment Opportunity Commission ("EEOC").

In May 2024, the EAB found that Dunn had timely filed her appeal but agreed with the county that, because Dunn was a non-career service employee, it lacked jurisdiction to hear the case. Dunn challenged the dismissal in circuit court under the Illinois Administrative Review Law ("ARL"), 735 ILCS 5/3-101 *et seq.*, in

October 2024. The EEOC issued a right to sue letter in May 2025, while the state case was still pending, and Dunn filed her initial complaint in this case in August of that year. Defendants filed their first motion to dismiss in this case in October 2025, and it was pending before me when the state court affirmed the EAB's dismissal of Dunn's appeal on the last day of that month.

In January 2026, I issued a memorandum opinion and order dismissing most of Dunn's claims. Dunn's complaint listed twelve counts (a typographical error omitted count VIII, so while they were labeled I–XIII, they numbered only a dozen): I–III alleged discrimination (including discharge), retaliation, and a hostile work environment based on Dunn's race, religion, and national origin under Title VII; IV–VI alleged a failure to accommodate, retaliation, and a hostile work environment under the Americans with Disabilities Act; VII–X alleged discrimination, retaliation, and a hostile work environment under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; XI alleged violation of the FMLA, 29 U.S.C. § 2601 *et seq.*; XII alleged discharge in retaliation for filing of a worker's compensation claim; and XIII alleged the intentional infliction of emotional distress.

I dismissed all but Counts I and XII. *Dunn v. Cook County*, 816 F. Supp. 3d 858, 871 (N.D. Ill. 2026). I found that Dunn had failed to present the majority of her complaints to the EEOC,

thereby failing to exhaust her administrative remedies. But as to Counts VII and XI, I found that while Dunn had exhausted her remedies, she had failed to plead sufficient facts to state a claim. In February 2026, Dunn filed the instant motion, which seeks leave to file a first amended complaint ("FAC") which in turn attempts to plead sufficient facts to resuscitate the claims in Counts VII and XI.

### III.

Defendants' main arguments against granting leave to amend focus on *res judicata*, but before turning to those, there are two preliminaries.[3] First, defendants have moved for leave to file a sur-reply which Dunn has opposed. While defendants' response adequately supported its positions, in the interest of getting all the arguments on the table, I grant their motion for leave. Second, I must deal with a preliminary sally defendants make pursuant to Federal Rule of Civil Procedure 41.

I neglected, in my memorandum opinion partially granting defendants' motion to dismiss, to specify whether I was dismissing Counts II–XI and XIII with or without prejudice. Defendants argue

---

[3] While it is generally good practice to begin with the movant's arguments, the Federal Rules' liberality towards amendment effectively turns the defendants' response in opposition into the operative filing. *See* Fed.R.Civ.P. 15.

that Rule 41(b) operates in the absence of such specification to make those dismissals prejudicial. If the dismissals were prejudicial, defendants contend, then Dunn cannot make use of the liberal standard for amendment in Rule 15 but must instead make a more difficult motion for reconsideration. Dunn, in reply, appeals to the Seventh Circuit's preference for allowing at least one amendment as a matter of course.

Defendants are correct that Rule 41(b) holds that "[u]nless the dismissal order states otherwise, a dismissal...operates as an adjudication on the merits." The purpose of Rule 41(b) is to provide for a "default rule to determine the import of a dismissal when a court fails to make that clear," because in the absence of a default rule, appellate and other courts trying to divine the intent of the trial judge would be left guessing or reading the tea leaves of the record. *Lomax v. Ortiz-Marquez*, 590 U.S. ---, 140 S. Ct. 1721, 1725 (2020). This is especially true where, in contrast to the current situation, the dismissal order terminated the case. As such, Rule 41(b) operates to create a presumption, rather than an ironclad finding, that an unspecified dismissal is prejudicial. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1008 (7th Cir. 2019) ("Although the district court's dismissal order made no mention of whether the claims were dismissed with or without

prejudice, a dismissal is *generally presumed* to be with prejudice.") (citing Rule 41(b) (emphasis added)).

Here, there is no need to refer to the presumption created by Rule 41(b). My intent was to dismiss with prejudice those claims which Dunn had not presented to the EEOC, which are likely time-barred, and which would be difficult or impossible to cure by pleading additional facts. My intent was to dismiss without prejudice those claims as to which Dunn had exhausted her administrative remedies but whose vagueness she could cure simply by pleading somewhat more specific facts.

Given that Dunn is attempting to correct her complaint only as to the latter claims, VII and XI, I find that her motion for leave to amend is the proper procedural vehicle, and I can move onto the bulk of the defendants' arguments.

## A. *Res Judicata*

Defendants lodge their first ground for denying amendment under *res judicata* or, more specifically, the doctrine of claim preclusion, which broadly prohibits litigants who lost in one court from obtaining a do-over in another. Federal courts apply the preclusion law of the state that rendered the judgment in question. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Illinois preclusion law "provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any

subsequent actions between the same parties" on the same cause of action. *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. 1996). "The law of claim preclusion in Illinois includes the concept of merger and bar, which precludes the sequential pursuit not only of claims actually litigated" before a state court in a prior lawsuit, but of all the claims a litigant *could have brought* in that lawsuit, whether or not the litigant actually brought them. *Dookeran v. County of Cook, Ill.*, 719 F.3d 570, 576 (7th Cir. 2013) (citations omitted).

A party asserting claim preclusion must establish that the prior decision meets three requirements: (1) it was a final judgment on the merits by a court of competent jurisdiction; (2) there is an identify of causes of action between the prior and current cases; and (3) there is an identity of parties or their privies. *Cooney v. Rossiter*, 986 N.E.2d 618, 621 (Ill. 2012). In Illinois, the second element is assessed under the "transactional" approach, which holds that all claims arising from the same set of operative facts, no matter how disparate their legal theories of relief, constitute the same cause of action. *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 637 (7th Cir. 2004). Claim preclusion is "bounded by the Due Process Clause of the Fourteenth Amendment, which overrides the otherwise preclusive effect of a prior judgment if the claimant did not have a full and fair opportunity to

litigate his claim in the prior action." *Dookeran*, 719 F.3d at 576 (cleaned up). However, merger and bar applies to this due process inquiry, and where a litigant "could have joined his federal claims" with a state administrative appeal, "then he had a full and fair opportunity to litigate those claims," even if he neglected to join them. *Garcia*, 360 F.3d at 639. Finally, Illinois has adopted elements of the Second Restatement of Judgments as to *res judicata*, including that the doctrine's preclusive effect will not apply "where the parties have agreed in terms or, in effect, that the plaintiff may split his claim, or that the defendant has acquiesced therein." *Thorleif Larsen & Son, Inc. v. PPG Indus. Inc.*, 532 N.E.2d 423, 427 (Ill. 1988).

Defendants contend that claim preclusion applies, arguing that: (1) there was a final judgment on the merits by the Cook County circuit court; (2) because Dunn could have but failed to raise her discrimination claims alongside her administrative review claim in the circuit court, there is an identity of causes between that action and this one; and (3) there is an identity of parties.

Dunn does not dispute that the parties are the same across the two actions, but she denies that the other two requisites have been met. She contends that, because the EAB dismissed her appeal for lack of jurisdiction, and because the circuit court merely

affirmed that dismissal, the prior decision was not a final judgment on the merits. She appeals to Illinois Supreme Court Rule 273 and Illinois case law that holds that dismissal for a lack of subject matter jurisdiction "is not considered a decision on the merits." ECF 33 at 4. She argues that there is no identity of causes because her two cases share only one operative fact—her firing—and none of the others; her state claim was all about her compliance or noncompliance with CCDPH employee policies, while her federal claims concern her civil rights. And she contends that, because defendants "engineered" a narrowly jurisdictional decision before the EAB, it would be "fundamentally unfair" to allow them to now rest on that decision to cut off her federal claims.

I agree with defendants on nearly all points.

Dunn is correct that Cook County's Employment Appeals Board dismissed her appeal for lack of jurisdiction, but that fact does not prevent the circuit court's decision from constituting an adjudication on the merits. In the first place, the EAB's decision was more analogous to a dismissal for lack of personal jurisdiction—the board had jurisdiction over exactly the kind of subject matter Dunn wished to present, but it lacked jurisdiction over the claims of all non-career service *people*. Second and more importantly, the circuit court did not dismiss Dunn's complaint for lack of jurisdiction; rather, because it had subject matter

11

jurisdiction to hear her administrative appeal, it reviewed that appeal and rendered a decision on the merits *of her administrative appeal*: that the EAB had been correct. *See* ECF 32-3 at 2.

Third, because Illinois circuit courts are courts of general jurisdiction, Dunn could have raised her ADEA and FMLA claims before the circuit court alongside her administrative appeal. *Walczak v. Chicago Bd. of Ed.*, 739 F.3d 1013, 1017 (7th Cir. 2014) ("We have held that Illinois litigants seeking circuit-court review of administrative proceedings implicating events that also give rise to a federal civil-rights claim must join that claim with the judicial-review action in the circuit court."). This means that, had Dunn brought those claims in the circuit court, the circuit court would have had subject matter jurisdiction and would have been able to render an adjudication on the merits. Under the doctrine of merger and bar, then, because she could have brought those claims there, preclusion applies to them here. *Dookeran*, 719 F.3d at 576.

Dunn argues that she could not have fully and fairly litigated her federal claims even if she had brought them because the state court's review would have been limited to the administrative record. This is incorrect. The state court's review of the administrative decision would have been limited to that record,

12

but her civil rights claims would have been developed in discovery. *Garcia*, 360 F.3d at 643.

Dunn's contention that her EAB appeal and her civil rights claims share only the fact of her firing, and thus do not share identity under the transactional test, is similarly unavailing. Dunn's overall position is that the OIIG investigation into her dual employment was a pretext for CCDPH's desire to fire her for discriminatory reasons. While Dunn is notionally right that her EAB appeal concerned only her adherence to employment guidelines, part of her gripe with the EAB is that she was not allowed to present evidence of how her firing was pretextual and bound up with the discrimination against her. *See* ECF 32-5 at 4-10. That is, all of her claims are related to the same transaction: a rules-based firing which served as a pretext for a discriminatory firing. *Garcia*, 360 F.3d at 637 (holding that claims "aris[ing] from the same group of operative facts" will constitute the same transaction "even if there is not a substantial overlap of evidence" needed to support each claim) (cleaned up).

I do agree with Dunn, however, that *res judicata* should not bar her claims here, because I find that defendants have acquiesced to the splitting of Dunn's lawsuits. In *Thorleif*, the Illinois Supreme Court approvingly quoted a comment to the Second Restatement of Judgment's Section 26:

13

'Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.'

532 N.E.2d at 427.

Dunn filed her administrative appeal in Cook County circuit court on October 1, 2024. She filed her first complaint in the instant case on August 11, 2025. Defendants filed their first motion to dismiss this case on October 17, 2025. They did not include an argument under *res judicata* or any reference to claim preclusion. At that point, there was no decision from the state court, but defendants would have been within their rights to ask me to stay proceedings, given that that case had been pending and given that, based on all the law discussed above, its decision, once rendered, would have become preclusive.[4] Defendants instead chose to wait. They may have hoped that by failing to tip Dunn off to the possibility of claim preclusion, they would keep her from properly filing her claims in state court prior to that court entering a judgment.

---

[4] *See Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 646–651 (7th Cir. 2021) (discussing stays of federal cases duplicative of pending state cases pursuant to *Colorado River* abstention).

14

The state court issued its decision affirming the EAB on October 31, 2025. Defendants did not raise *res judicata* in their December 17, 2025, reply in support of their motion to dismiss in this case, even though at that point there was a final adjudication from the state court and, as discussed above, they would have had a winning argument. Instead, they waited again. But by waiting, defendants defeated one of the fundamental purposes of the prohibition against claim splitting: avoiding the waste of judicial resources. *Matrix, IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 547 (7th Cir. 2011) (noting that preclusion doctrine seeks to minimize "the expense and vexation attending multiple lawsuits [and to] conserve judicial resources.") (cleaned up). Defendants also failed to raise *res judicata* as an affirmative defense in their February 20, 2026, answer to Dunn's initial complaint.

I have already decided defendants' initial motion to dismiss— which would have been significantly simpler to decide on *res judicata* grounds—and am now in another motions decision which could have been avoided if defendants had timely brought up claim preclusion. I see no purpose in now precluding some but not all of Dunn's civil rights claims. Defendants have acquiesced to their litigation. *See Walczak*, 739 F.3d at 1015 (finding that the Chicago Board of Education had not acquiesced to claim splitting where

"the Board raised its preclusion defense as soon as [plaintiff brought her] second suit").

## B. Factual Futility

Defendants next argue that even if Dunn's claims in Counts VII and XI are not barred by claim preclusion, the additional facts in her FAC fail to cure the problems with her initial complaint, making amendment futile.

In order to make out a *prima facie* case of age discrimination under the ADEA, Dunn needed to show that younger, similarly-situated employees were treated more favorably than she was. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) (overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016)). To do that, she had to plead specific facts about those employees, like "showing that [they] dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances" as would justify disparate treatment. *Id.* at 617–18. I found that Dunn had failed to do so in her initial complaint because, although she "asserted that younger employees were better treated," she had "failed to plead *any* facts about these younger employees (or their supervisors or what standards they were subject to)." *Dunn v. Cook County*, 816 F. Supp. 3d at 869 (emphasis in original).

16

Here, by contrast, Dunn has pled copious specifics about named younger employees, their behavior, their supervisors, and their disparate treatment. ECF 28-1 at 9–11. Facial plausibility in a complaint exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and Dunn's FAC has reached facial plausibility as to her age discrimination claim. *Iqbal*, 556 U.S. at 678.

I do note, however, that defendants are correct that Dunn has a viable ADEA claim only to the extent that she preserved one in her EEOC complaint. Dunn's EEOC complaint encompassed only claims for discriminatory discharge due to her age, not discriminatory treatment generally. *See Dunn v. Cook County*, 816 F. Supp. 3d at 867–68. As such, going forward, the scope of Dunn's claim in Count VII is limited to her discharge.

In order to make out an FMLA claim, Dunn needed to show that "(1) [s]he was eligible for the FMLA, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA; (4) [s]he provided notice of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he was entitled." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) (citing 29 U.S.C. § 2615). An employee is entitled to leave under the FMLA if "(1) she is afflicted with a 'serious

17

health condition' and (2) that condition renders her unable to perform the functions of her job." *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). I found that, while Dunn alleged that she had bursitis, she had failed to establish that the bursitis was a serious health condition or that it had rendered her unable to perform her job. *Dunn v. Cook County*, 816 F. Supp. 3d at 870.

Here, in contrast, Dunn has pled that her bursitis seriously hampered her ability to go about her daily life and that it—by preventing her from walking—made her incapable of ordinary, in-office work. ECF 28-1 at 13. She has likewise pled that her bursitis required surgery and regular outpatient treatment. *Id.* at 26-27. On those facts, she has plausibly stated an FMLA claim. *Iqbal*, 556 U.S. at 678.[5]

_____

[5] Defendants point out that Dunn's factual allegations in the FAC contradict or are at least somewhat at odds with those in her initial complaint. But, as Dunn argues, if I allow her to amend, her FAC will supersede the original complaint, and its facts will no longer obtain for any purpose. *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) ("[I]t

18

## IV. Conclusion

Dunn's motion is granted. The claims in Counts I, VII, IX, and XII are live, as limited in scope by this and my prior opinion. The claims in all other counts, which Dunn has repled to preserve them for appellate review (an unnecessary and thus disfavored practice) remain dismissed with prejudice.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: May 8, 2026

---

is well established that the amended pleading supersedes the original pleading.").